UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Ann Dominick,<br><br>      Plaintiff,<br><br>    vs.<br><br>Wal-Mart Stores, Inc.,<br><br>      Defendant. | 3:14-cv-08192 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 30] |

## I.  MOTION PRESENTED

Defendant Wal-Mart Stores, Inc. ("Walmart") moves at docket 30 for summary judgment pursuant to Federal Rule of Civil Procedure 56, supported by a statement of facts at docket 31.  Plaintiff Mary Ann Dominick ("Dominick") opposes at docket 35, supported by controverting and additional statements of fact at docket 36.  Walmart replies at docket 37.  Oral argument was requested but would not assist the court.

## II.  BACKGROUND

Walmart hired Dominick as an Overnight Stocker in 2007.[1]  Dominick claims that on May 25, 2013, she experienced an allergic reaction to the floor waxing chemicals

---

[1] Doc. 36 at 1 ¶ 1.

that were used during her shift.[2]  She testified that she "started feeling burning in [her] scalp, and [her] face, and [her] neck, and [her] throat was starting to close."[3]  She had complained to her Walmart managers about her chemical insensitivity before, she says, but this was the most severe reaction she had ever had.[4]

On May 30 Dominick wrote an "Incident Report" to her Walmart managers describing this allergic reaction and stating that "[m]anagement could have avoided this situation by not placing me in the area of waxing."[5]  On June 6 Dominick submitted to Walmart a formal reasonable accommodation request pursuant to the Americans with Disabilities Act ("ADA").[6]  She stated that she suffers from anaphylactic reactions to "chemicals/floor stripper/waxing vapors" and requested assignments that were at least six aisles away from the waxing crew.[7]  Walmart granted this request on July 9 and informed Dominick that she would be given work assignments 134 feet away from "chemical toxins with the fans blowing away from [her] location."[8]

Dominick claims that her supervisor at the time, Renita Cruz ("Cruz"), was "frustrated" that Dominick was granted this accommodation and tested its boundaries constantly.[9]  For instance, on July 20 Cruz assigned Dominick to work in the Crafts Department.  The parties dispute this assignment's proximity to the floor chemicals:

---

[2]*Id.* at 6-7 ¶¶ 22-23.  *See also* Doc. 31-1 at 4 lns. 14-17; Doc. 31-1 at 182; Doc. 36-1 at 3 ¶ 7.

[3]Doc. 31-1 at 31.

[4]Doc. 36-1 at 3 ¶¶ 8-10.

[5]Doc. 31-1 at 182.

[6]*Id.* at 191.

[7]*Id.*

[8]*Id.* at 195.

[9]Doc. 36-1 at 4 ¶¶ 18, 20.

Dominick claims she was only 82 feet from where the floor crews were working,[10] Walmart claims she was "on the opposite side of the [s]tore."[11]  Dominick states that while working in the Crafts Department she "suffered another major reaction to the floor crew's chemicals."[12]  She also claims that she was assigned to work less than 134 feet from the floor crew on July 30 and August 6.[13]  Dominick wrote her Walmart managers a letter dated August 8 in which she complained about being assigned work that violates her accommodation.  She stated that Cruz was knowingly placing her "in assignments where [Cruz] knows the footage has violated that [accommodation] and is a life threatening situation" and asked Walmart to assure her that this would not continue.[14]

Dominick states that on August 8 she met with Cruz and Walmart Personnel Coordinator Kellie Rogers ("Rogers"), and Cruz told her that she was being assigned to the Chemical aisle.[15]  According to Dominick, Rogers told her that she needed to provide Walmart with a list of chemicals to which she was allergic, a list of departments where she could work, and make a second formal reasonable accommodation request.[16]

On August 12 Dominick submitted her second reasonable accommodation request, asking to be kept at least 20 feet from the 13 substances that she listed in her

---

[10]Doc. 36 at 11 ¶ 36; Doc. 36-1 at 4 ¶ 22.

[11]Doc. 31 at 8 ¶ 36 (citing Vance Decl., Doc. 31-1 at 107 ¶ 31).

[12]Doc. 36-1 at 4-5 ¶ 25.  *See also* Doc. 31-1 at 198-200.

[13]Doc. 31-1 at 198-99.

[14]*Id.* at 199.

[15]Doc. 36-1 at 5 ¶ 28.

[16]*Id.* ¶ 29.

request.[17] She later submitted to Walmart a list of departments where she thought she could work.[18] According to her, Walmart never asked her for additional information related to this second request.[19] Walmart denied the request on October 3, stating that it could not guarantee that she would not come into contact with the substances she listed, and offering her the alternative accommodation of a mask to use while she worked.[20] Dominick claims that a mask would not be an effective accommodation.[21]

Walmart then offered to reassign Dominick to a position in the day shift, away from the floor-waxing crew.[22] Dominick declined, stating that doing so would interfere with her medical appointments,[23] decrease her wages,[24] and prevent her from running her own business during the day.[25] Walmart also offered to reassign Dominick to back-room, fitting-room, or cashier positions. Dominick declined these offers too, stating that if she were to work in a fixed location, as opposed to one that rotates, she would be exposed to the floor crews' chemicals inevitably.[26] For example, she testified that the problem with being a cashier is that "when people buy this stuff it still goes through the cashier."[27]

---

[17]Doc. 31-1 at 202-03.

[18]Doc. 31-1 at 208.

[19]Doc. 36-1 at 5 ¶ 30.

[20]Doc. 31-1 at 210.

[21]Doc. 1 at 7 ¶ 62.

[22]Doc. 36 at 16 ¶ 52; Doc. 31-1 at 6 ¶ 39.

[23]*Id.*

[24]Doc. 31-1 at 9 lns. 15-19.

[25]*Id.* at 83 lns. 3-17. *See also id.* at 84 lns. 9-10.

[26]Doc. 36 at 16-17 ¶ 53.

[27]Doc. 31-1 at 87 lns. 11-13.

1    Dominick reported a workplace knee injury in January 2014.[28] She continued to
2 work on a light duty day shift for several months before she took medical leave for knee
3 surgery. She returned to work on the night shift with light duty restrictions in the end of
4 July.[29] Dominick claims that, on the night she returned to work after her surgery, Cruz
5 assigned her to work closer than 134 feet to the floor crews and she suffered another
6 allergic reaction.[30]

7    Dominick states that Rogers and Walmart Store Manager Carmon Ramirez
8 called her into the office in September at the end of her shift and told her that if she
9 could not lift items that weighed 50 pounds, or obtain another reasonable
10 accommodation of her inability to satisfy that requirement, she would not be allowed to
11 return to work.[31] She was put on unpaid medical leave, she states, and not allowed to
12 return until October 20, 2015.[32]

13   Dominick filed the instant two-count action against Walmart in October 2014.[33]
14 The first count alleges that Walmart violated the ADA by failing to engage her in the
15 interactive process required by the ADA, by failing to provide her with a reasonable
16 accommodation, and by discriminating and retaliating against her.[34] The second count
17 alleges companion claims under the Arizona Civil Rights Act, A.R.S. § 41-1461, *et*
18 *seq*.[35]

---

[28]Doc. 36 at 19 ¶ 61.

[29]*Id.*

[30]Doc. 36-1 at 7 ¶¶ 49-53.

[31]*Id.* at 7-8 ¶¶ 54-55.

[32]*Id.* at 8 ¶¶ 56-57.

[33]Doc. 1.

[34]*Id.* at 8-10.

[35]*Id.* at 10-11.

Dominick returned to work at Walmart in 2015.[36] Her previous managers no longer supervise her, she states, and her new managers have been "180-degrees different" in accommodating her disability: they tell her where the floor crews are waxing so she can avoid them, reassign the floor crews away from where she is working, provide her with assistance with items that weigh more than 25 pounds, and rotate her among departments to keep her at least 134 feet away from the floor crews.[37]

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[39] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[40] However, summary judgment is mandated under Rule 56 "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[41]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[42] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that

---

[36]Doc. 36 at ¶ 64.

[37]Doc. 36-1 at 8 ¶¶ 58-64.  *See also* Doc. 36 at 20-21 ¶¶ 64-65.

[38]Fed. R. Civ. P. 56(a).

[39]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[40]*Id.*

[41]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[42]*Id.* at 323.

summary judgment is warranted; it need only point out the lack of a genuine dispute as to any material fact.[43] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[44] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[45] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[46]

## IV.  DISCUSSION

### A.  The Interactive Process

The ADA broadly prohibits employers from discriminating against employees on the basis of disability.[47] To help accomplish this objective, it imposes on employers an affirmative duty to make "reasonable accommodations" to their employees' "known physical or mental limitations" unless doing so would impose an undue hardship.[48] In some instances it is easy for an employer to identify the appropriate reasonable accommodation. Where that is not the case, the employer must "initiate an informal, interactive process with the individual with a disability" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could

---

[43]*Id.* at 323-25.

[44]*Anderson,* 477 U.S. at 248-49.

[45]*Id.* at 255.

[46]*Id.* at 248-49.

[47]42 U.S.C. § 12112(a).

[48]42 U.S.C. § 12112(b)(5)(A).

overcome those limitations."[49]  As the en banc Ninth Circuit panel in *Barnett* explained*,* this interactive process "is at the heart of the ADA's process and essential to accomplishing its goals.  It is the primary vehicle for identifying and achieving effective adjustments which allow disabled employees to continue working without placing an 'undue burden' on employers."[50]

The interactive process includes the following four steps: the employer must (1) identify the essential functions of the employee's position, (2) consult with the employee to identify his or her specific limitations, (3) identify potential accommodations and assess the effectiveness of each, and (4) implement the accommodation that is "most appropriate for both the employee and the employer."[51]  Employers must engage in the interactive process in good faith.  Where an employee accuses an employer of failing to do so, as here, courts should attempt to isolate the cause of the breakdown in the interactive process and assign responsibility.[52]  An employer is liable if it failed to engage in the interactive process in good faith and a reasonable accommodation would have been possible if it had acted differently.[53]  "[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process."[54]

---

[49] 29 C.F.R. § 1630.2(o)(3).  *See also Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111 (9th Cir. 2000), *vacated on other grounds sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

[50] *Barnett*, 228 F.3d at 1113.

[51] *Id.* at 1114 (quoting 29 C.F.R. Pt. 1630, App. § 1630.9).

[52] *Barnett*, 228 F.3d at 1115 (citing *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).

[53] *Id.* at 1116.

[54] *Id.*

Dominick's complaint alleges that Walmart failed to engage in the interactive process in good faith,[55] but the factual basis for this allegation is unclear.[56] In her opposition she mentions the general rules governing the interactive process but does not respond directly to Walmart's assertion that it met each of those requirements in this case. In fact, Dominick concedes that the interactive process with Walmart produced an appropriate reasonable accommodation: Walmart's agreement that she would work no closer than 134 feet to chemical toxins.[57] Dominick is not challenging the way in which Walmart engaged in the interactive process, but rather the actions of her managers that violated the accommodation produced by that successful process.[58] Because there is no genuine dispute that Walmart engaged in the interactive process itself in good faith, which led to an effective reasonable accommodation, Walmart will be granted summary judgment on this claim.

**B.   Reasonable Accommodation**

Walmart spends several pages of its opening brief arguing that its denial of Dominick's second reasonable accommodation request was appropriate.[59] Because Dominick is not challenging that denial, this argument misses the mark. According to Dominick's opposition, her failure-to-accommodate claim involves three distinct challenges: (1) to Walmart's "refusal to engage with Ms. Dominick" (discussed above); (2) to Walmart's refusal to "abide by her approved accommodation at the store management level;" and (3) to Walmart's refusal "to accommodate Ms. Dominick with

---

[55]Doc. 1 at 9 ¶ 76.

[56]Dominick baldly asserts that Walmart "refus[ed] to engage with" her. Doc. 35 at 6.

[57]Doc. 35 at 7-8. *See also id.* at 9 ("Once Plaintiff had an approved Accommodation from Wal-Mart, the failure to accommodate stemmed from the store managers' <u>refusal to abide by that Accommodation</u>, causing Plaintiff to suffer bodily harm and miss work and lose pay.") (emphasis in original).

[58]Doc. 35 at 9; Doc. 36 at 10-11 ¶ 35.

[59]Doc. 30 at 11-14.

light duty after her knee injury."[60] Because Dominick is not challenging Walmart's denial of her second reasonable accommodation request, nor could she because she concedes that the approved accommodation is effective, Walmart's argument lacks merit.

Walmart is correct, however, that Dominick's complaint does not allege that Walmart is liable for refusing to grant her light duty work after her knee injury. The court need not consider Dominick's arguments related to this non-existent claim.[61]

**C. Discrimination and Retaliation**

ADA discrimination and retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework.[62] Under that framework, the employee has the initial burden of establishing a prima facie case of discrimination or retaliation. The employee does so by establishing three elements: (1) he or she was engaged in protected activity; (2) he or she suffered an adverse action; and (3) there was a causal link between the two.[63] If the employee can establish a prima facie case, the burden of production shifts to the employer to present legitimate reasons for the adverse action. If the employer does so, "the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual."[64]

Dominick argues that she has established a prima facie case because her initial reasonable accommodation request was a protected activity, for which she alleges that Walmart retaliated against her by (1) assigning her work too close to the floor crews;

---

[60]Doc. 35 at 6.

[61]*See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 574 (2007).

[62]*Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014).

[63]*See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015).

[64]*Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

(2) assigning her work where she was required to lift heavy items;[65] and (3) placing her on unpaid medical leave because she could not lift heavy items.[66] Walmart does not dispute that Dominick's reasonable accommodation request was a protected activity, but does dispute that Dominick has otherwise established a prima facie case.

Walmart first argues that Dominick's work assignments were not "adverse employment actions." It cites two cases where courts found that an adverse action did not occur because the employee's new work assignment did not differ in any material way from the old assignment.[67] By drawing factual parallels to those cases, Walmart is apparently arguing, unpersuasively, that there is nothing materially different about work assignments that cause its employees to suffer allergic reactions or render them unable to do their jobs and those that do not.

Walmart's next argument is that Dominick has not "identified any similarly situated Associates who were not disabled and were treated more favorably, part of her prima facie case."[68] Walmart cites no authority for the proposition that a showing of disparate treatment of similarly situated employees is a necessary element of a prima facie ADA retaliation case.[69] This argument lacks merit as well.

---

[65]*See* Doc. 36-1 at 5 ¶ 26.

[66]Doc. 35 at 13-14.

[67]Doc. 37 at 8-9 (citing *Sillars v. Nevada*, 385 F. App'x 669, 671 (9th Cir. 2010) ("Sillars has presented no evidence that the position to which she was moved differed in any material way from the position she occupied prior to her complaints, either with respect to her responsibilities or the conditions under which she performed them."); *Scott v. City of Phoenix*, No. CV-09-0875-PHX-JAT, 2011 WL 3159166, at *6 (D. Ariz. July 26, 2011) ("Scott has not provided any evidence that there was something objectively undesirable with the south side of the building and a work space near the other members of his auditing team.").

[68]Doc. 37 at 9.

[69]*But see Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("A showing that the County treated similarly situated employees outside Vasquez's protected class more favorably would be probative of pretext.").

-11-

Next, Walmart argues that Dominick cannot establish causation for her July 20 and July 30 assignments because Cruz could not have known that Dominick would be working so close to the floor waxing crews on those dates.[70] Because this issue turns on questions of disputed material fact,[71] it cannot be resolved in Walmart's favor at summary judgment.

Finally, Walmart argues that, even if Dominick can establish a prima facie case, she cannot establish that Walmart's reasons for assigning her inappropriate work were pretextual.[72] It contends that Dominick's assignments were not retaliatory because they were good faith attempts to honor her reasonable accommodation, and Dominick lacks any evidence showing that she was singled out due to her accommodation request. Dominick "cannot have it both ways," Walmart argues, by demanding to be moved away from the waxing and then complaining that her new work assignments were retaliatory.[73]

This argument fails as well. Dominick has submitted evidence showing that before she made her formal accommodation request Walmart was able to adequately accommodate her disability by reassigning her to different locations in the store. She has also submitted evidence showing that her current Walmart supervisors are able to do the same. There remains a question of material fact whether Dominick's intermediate supervisors gave her inappropriate work assignments in retaliation for her reasonable accommodation request. Summary judgment is inappropriate.

## V. CONCLUSION

Based on the preceding discussion, Walmart's motion at docket 30 is GRANTED in part and DENIED in part as follows: summary judgment is granted in Walmart's favor

---

[70] Doc. 30 at 16.

[71] *See* Doc. 36-1 at 4 ¶¶ 22-23.

[72] Doc. 37 at 10-11.

[73] Doc. 30 at 16-17.

on Dominick's claims that are based on its failure to engage in the interactive process in good faith. In all other respects, Walmart's motion is DENIED.

DATED this 28th day of June 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT